# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Kirk E. Wolhart,

                              Plaintiff,

                                              Civ. No. 05-254 (RHK/JSM)
v.                                            **MEMORANDUM OPINION
                                              AND ORDER**

Genuine Parts Company,
d/b/a NAPA Auto Parts,

                              Defendant.

Dan K. Nelson[1], Peterson & Nelson, St. Paul, MN, for Plaintiff.

Patricia E. Simon, Marty N. Martenson, Cristine S. Tenley, and Ted M. Scartz, Martenson, Hasbrouck & Simon LLP, Atlanta, GA; and Shirley O. Lerner, Richard G. Morgan, and Shane V. Bohnen, Bowman & Brooke LLP, Minneapolis, MN, for Defendant.

## Introduction

Plaintiff Kirk E. Wolhart has sued his former employer, Defendant Genuine Parts Company, d/b/a NAPA Auto Parts ("NAPA"), claiming that he was terminated in violation of common law, in retaliation for filing a workers' compensation claim, and because he is disabled. NAPA has now moved for summary judgment on all of Wolhart's claims. For the reasons set forth below, the Court will grant NAPA's Motion.

---

[1]Although Attorney Nelson has appeared in this action on behalf of Plaintiff Kirk E. Wolhart, he did not file a memorandum in opposition to the instant Motion for Summary Judgment; the only submission the Court has received in opposition to the instant Motion is the Affidavit of Kirk E. Wolhart. (Doc. No. 27.)

**Background**

NAPA is in the business of distributing and selling replacement auto parts.  It has a

Distribution Center and a network of company-owned retail NAPA Auto Parts stores in and

around the Minneapolis-St. Paul area.  (Meierding Aff. ¶ 4.)  From June 27, 2003, through

May 19, 2004, Wolhart worked for NAPA as a driver and parts delivery person.  (Wolhart

Dep. Tr. at 144; Dep. Ex. 4.)  During his employment with NAPA, Wolhart worked out of

two different stores; from January 2004 through his termination in May 2004, he worked at

the store managed by Scott Meierding, who was his direct supervisor during that time.

(Meierding Aff. ¶¶ 4-5.)  Prior to January 2004, it appears that his supervisor was Randy

Mester.[2]  (See Dep. Ex. 18.)

On November 3, 2003, Wolhart reported to NAPA that he had suffered an on-the-

job injury; his injury was diagnosed as a inguinal hernia for which he required surgery.

(Dep. Ex. 24.)  Pursuant to his doctor's instructions, Wolhart was granted leave from work

from November 3, 2003 through January 5, 2004, so that he could undergo surgery and

rehabilitation.  (Id.)  During that time Wolhart received short-term disability benefits

pursuant to NAPA policy.  (Id.)  Wolhart filed a workers' compensation claim related to his

injury, which he has settled.  (Simon Aff. Ex. C.)

Wolhart returned from leave in January 2004 and began working under Meierding.

(Meierding Aff. ¶ 5.)  For a short time after his return to work, Wolhart was subject to a

---

[2]The record is not entirely clear on this point.

temporary lifting restriction.  (Wolhart Dep. Tr. at 283.)  The lifting restriction did not

affect his ability to perform his delivery driver job.  (Id.; see also Meierding Aff. ¶ 12.)

According to Wolhart, he was fully recovered from his hernia and resulting surgery by

February or March 2004, although there is some indication that he was still receiving

physical therapy of some sort possibly related to the hernia in April 2004.  (Wolhart Dep.

Tr. at 234, 277-78.)

      Meierding noticed that Wolhart's attendance became "very unreliable"

approximately one month after his return from leave.  (Meierding Aff. ¶ 7.)  According to

Meierding, Wolhart was absent from work or left early on at least 24 occasions between

February and May 2004.  (Id. ¶ 10.)  "The frequency of his absences from work made it

impossible for [Wolhart] to perform his job or for [Meierding] to manage the schedule for

the store."  (Id.)  On February 5, 2004, Wolhart was issued a written warning regarding

unscheduled absences on February 4 and 5, 2004.  (Dep. Ex. 19.)  The warning stated that

Wolhart "missed work on 2/4 and 2/5 of this week," and that he "is required to be at work

on the days he was scheduled."  (Id.)  It also stated that "the end result will be that Kirk will

be let go."[3]  (Id.)  Wolhart contends that any absences from work were related to his

---

[3]This was not Wolhart's first written warning from NAPA.  On July 23, 2003, he
received a warning because he "went to one of [NAPA's] customers and interrupted a
conversation they were having with their customer."  (Dep. Ex. 18.)  The warning states that
Wolhart "needs to be professional at all times, whether he is at a customers store or in the
store," and that "[t]his is a very serious matter and termination could be the end result."
(Id.)

"workers' compensation injury," "for physical therapy," or "medical" absences.  (Id. ¶¶ 14, 27.)

On May 17, 2004, Wolhart reported to work, but left almost immediately because he was not feeling well.  He saw his doctor, was diagnosed with a sinus infection, and missed work for the remainder of the day on May 17, and the full day on May 18.  (Wolhart Dep. Tr. at 252-53.)  When he returned to work on May 19, his employment with NAPA was terminated for "excessive absenteeism and unreliability in scheduling."  (Meierding Aff. ¶ 11; see also Dep. Ex. 20.)

Wolhart's Complaint alleges four claims against NAPA: (1) wrongful termination in violation of common law; (2) workers' compensation retaliation; (3) discriminatory discharge due to disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, et. seq.; and (4) discriminatory discharge due to disability in violation of the Minnesota Human Rights Act ("MHRA"), Minn. Stat. § 363A.08, subd. 2.  NAPA has moved for summary judgment on each of his claims.

## Standard of Decision

Summary judgment is proper if, drawing all reasonable inferences favorable to the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). The moving party bears the burden of showing that the material facts in the case are undisputed.  See Celotex, 477 U.S. at 322; Mems v. City of St. Paul, Dep't of Fire & Safety

Servs., 224 F.3d 735, 738 (8th Cir. 2000).  The court must view the evidence, and the

inferences that may be reasonably drawn from it, in the light most favorable to the

nonmoving party.  See Graves v. Arkansas Dep't of Fin. & Admin., 229 F.3d 721, 723 (8th

Cir. 2000); Calvit v. Minneapolis Pub. Schs., 122 F.3d 1112, 1116 (8th Cir. 1997).  The

nonmoving party may not rest on mere allegations or denials, but must show through the

presentation of admissible evidence that specific facts exist creating a genuine issue for

trial.  See Anderson, 477 U.S. at 256; Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th

Cir. 1995).

**Analysis**

NAPA argues that Wolhart's claims must be dismissed because he has failed to raise

genuine issues of material fact as to any of them on the merits and, with respect to his ADA

claim, because he failed to file a Charge of Discrimination with either the Equal

Employment Opportunity Commission ("EEOC") or the Minnesota Department of Human

Rights ("MDHR").  (See Mem. in Supp. at 8.)  The Court will consider each of Wolhart's

claims in turn.

**A.      Common Law Wrongful Termination**

In his Complaint, Wolhart alleges that he was an "at will employee" of NAPA

(Compl. ¶ 6), but that NAPA "wrongfully and without just cause terminated [his]

employment in violation of its own policies as set out in the employee's manual" (id. ¶ 12).

The basis for Wolhart's claim appears to be an "Employee Attendance Standards" form he signed on June 26, 2003 (the "Attendance Form"), which provides in part that "[a]n employee who has **7 occurrences or 2 no-call, no-shows** in a rolling year is subject to termination." (Dep. Ex. 11 (emphasis in original).) The Attendance Form also provides that "[a]n occurrence does not include . . . [a] medical or dental appointment provided the supervisor is given at least 5 days notice. **Employees will be required to provide documentation verifying the medical/dental appointment**." (Id. (emphasis in original).)

Wolhart does not, however, address this claim in his submission in opposition to the instant Motion. Therefore, it is unclear under what theory he is advancing his claim; on its face, the Complaint does not allege a breach of contract—rather, it alleges a breach of NAPA's "own policies"—nor does it allege that his termination was in violation of public policy.[4] However, to the extent Wolhart is alleging that his termination was a breach of contract, the Court determines that his claim must fail.

---

[4]To the extent that Wolhart is alleging that his termination was in violation of public policy, the Court determines that his claim fails. Such a cause of action is recognized if an "employee is discharged for refusing to participate in an activity that the employee, in good faith, believes violates any state or federal law or rule or regulation adopted pursuant to law." Nelson v. Productive Alternatives, Inc., 696 N.W.2d 841, 846 (Minn. App. 2005) (internal quotation omitted), review granted, Aug. 16, 2005. Wolhart has not alleged that he was terminated for refusing to participate in an activity that he believed violated any state or federal law or regulation. Accordingly, any claim that his termination violated public policy must be rejected.

"Under Minnesota law, absent a contrary agreement by the parties, employment is presumed to be at-will, permitting an employer to dismiss an employee for any reason or for no reason at all." Poff v. Western Nat'l Mut. Ins. Co., 13 F.3d 1189, 1191 (8th Cir. 1994). In order to overcome this presumption, Wolhart would have to prove that NAPA made "oral or written statements with specific and definite provisions, and not general statements of policy." Id. (internal quotation omitted). In the context of the employment relationship, "[w]hether a proposal is meant to be an offer for a unilateral contract is determined by the outward manifestations of the parties, not by their subjective intentions." Hunt v. IBM Mid America Employees Fed. Credit Union, 384 N.W.2d 853, 857 (Minn. 1986).

The only statement Wolhart makes in opposition to the instant Motion that could be construed as relevant to this claim, is that he was "under no written contract with the employer (Defendant)." (Wolhart Aff. ¶ 22.) Therefore, it seems that he is not relying on the Attendance Form to establish a written contract between himself and NAPA. And, the Court notes that this is consistent with other forms he signed, after he signed the Attendance From, while employed by NAPA. One such form—titled "Handbook Receipt and Acknowledgment," and signed on July 29, 2003—states "I know that neither my employment, nor this Handbook, constitute a contract of employment between me and the Company." (Dep. Ex. 5.) Another "Acknowledgment" form he signed on July 31, 2003, states: "I understand that neither this Handbook, nor any other document or publication establishes a contract of employment between the company and myself . . . . As an

7

employee at will, either the company or I can terminate my employment at any time, for any reason." (Dep. Ex. 6 (emphasis added).)

Nor does Wolhart present the Court with any evidence that anyone at NAPA "made any offer or promise relating to" the terms of his employment "that would satisfy the specificity requirements for an enforceable express covenant under Minnesota law." <u>Poff</u>, 13 F.3d at 1191. His only evidence in support of his claim is the Attendance Form, and any modification that this could have made to the at-will relationship between Wolhart and NAPA is negated by the other "outward manifestations of the parties," <u>Hunt</u>, 384 N.W.2d at 857—forms signed by Wolhart; those forms clearly reinforce the at-will nature of the relationship, and the right of either party to terminate his employment "at any time, for any reason." (Dep. Ex. 6.) <u>See</u> <u>Landers v. National R.R. Passenger Corp.</u>, 345 F.3d 669, 673-74 (8th Cir. 2003) (affirming grant of summary judgment on breach of contract claim where later personnel policy superceded earlier policy and made clear that it did not create a binding contract). Accordingly, the Court determines that Wolhart has failed to present a genuine issue of material fact with respect to his common law wrongful termination claim, and that claim cannot survive summary judgment.

**B.    Workers' Compensation Retaliation**

Wolhart also claims that he was terminated "for pursuing a workers' compensation claim as a result of [his] work-related injury." (Compl. ¶ 18.) On November 8, 2003, a First Report of Injury form was filed with respect to Wolhart's work-related inguinal hernia. (Dep. Ex. 21.) He was then on medical leave until January 2004, and he claims that

8

he had "fully recovered from his workers' compensation injury" by February 2004.

(Wolhart Aff. ¶ 29.)  Wolhart alleges that NAPA "began treating [him] differently after [he]

filed [his] workers' compensation claim in November 2003."  (Id. ¶ 7.)  He claims one of

his former supervisors "was not concerned; he wanted [Wolhart] to push off [the]

surgery—he thought the job was more important than [Wolhart's] health."  (Id.)  Wolhart

claims that, after he returned to work, that supervisor "was completely indifferent towards"

him, was "really snappy" towards him, and that he "just didn't fit in."  (Id. ¶ 8.)

It is unlawful under Minn. Stat. § 176.82 for an employer to terminate an employee

in retaliation for the employee filing a workers' compensation claim.   Section 176.82

provides, in part:

> Any person discharging or threatening to discharge an employee for seeking
> workers' compensation benefits or in any manner intentionally obstructing an
> employee seeking workers' compensation benefits is liable in a civil action
> for damages.

"Minnesota courts apply the McDonnell Douglas analysis to retaliatory discharge claims

under § 176.82."  Miller v. CertainTeed Corp., 971 F.2d 167, 171 (8th Cir. 1992) (citation

omitted).

To establish a prima facie case of retaliatory discharge under Minnesota law, an

employee must show: (1) statutorily-protected conduct by the employee; (2) adverse

employment action by the employer; and (3) a causal connection between the two.

Kunferman v. Ford Motor Co., 112 F.3d 962, 965 (8th Cir. 1997).  In Wolhart's case, the

first two elements are clearly met; his filing of a workers' compensation claim is protected activity, and his employment with NAPA was terminated.

Wolhart has failed, however, to present any evidence of a causal connection sufficient to create a genuine issue of material fact on his retaliation claim. According to Wolhart, he filed his workers' compensation claim on November 8, 2003, and his employment was terminated on May 19, 2004. While evidence that an adverse employment action took place "shortly after the filing of a claim is certainly some evidence of causation," Back v. Danka Corp., 335 F.3d 790, 792 (8th Cir. 2003), the timing and sequence of events in the instant case does not carry the day for Wolhart. First, six months passed between the time he filed his claim, and the time of his termination; this amount of time between the protected activity and the adverse employment action does not, under the circumstances here, raise an issue of fact as to causation. See, e.g., id. (determining that the plaintiff had not established causation where filing of claim and adverse employment action took place "in the same month"); see also Quick v. Wal-Mart Stores, Inc., — F.3d —, 2006 WL 738165, at *3 (8th Cir. Mar. 24, 2006) (affirming summary judgment for employer on pregnancy discrimination claim where the plaintiff was fired "the day she returned from maternity leave").

Second, even if the timing of events here was probative evidence regarding causation, it would not be "sufficient standing alone" to raise a genuine issue of material fact as to Wolhart's claim of retaliation. Back, 335 F.3d at 792. Wolhart must, therefore, present other evidence raising an issue of fact as to causation. The only other argument he

advances is that he was treated differently by certain NAPA employees once he returned from his medical leave.  (See, e.g., Wolhart Aff. ¶¶ 7, 8, 23, 29, 30.)  Wolhart's averments on this point, however, fall far short of that needed to survive a motion for summary judgment, because they are sweeping, conclusory, and completely lacking in any specificity.  For example, he states that when he returned from medical leave, "he noticed a distinct change of attitude towards him.  It was almost as if he did not have much time there left at Napa Auto Parts."  (Id. ¶ 30.)  He also states that "he noticed a change in attitude towards him by his employer, through its managers and other employees, and it was in a threatening manner."  (Id. ¶ 29.)  And that "[h]is employer was not on a talking basis with him but he treated him differently and pushed the Plaintiff to limits in his employment." (Id. ¶ 23.)

Wolhart's submissions on this point simply do not raise a genuine issue of material fact as to his retaliation claim.  In order to survive summary judgment, Wolhart "must substantiate [his] allegations with sufficient probative evidence based on more than mere speculation, conjecture, or fantasy."  Kunferman, 112 F.3d at 966 (internal quotation omitted); see also Grabovac v. Allstate Ins. Co., 426 F.3d 951, 955 (8th Cir. 2005) (plaintiff cannot "rely on conclusory statements in his affidavit" to defeat a motion for summary judgment).  He has failed to do so here.

However, even if Wolhart had raised an issue of fact with respect to causation sufficient to establish a prima facie case, the Court determines that he cannot show that the reason given by NAPA for his termination was a pretext for retaliation.  NAPA argues that

Wolhart's absences from work, whether excused or not, interfered with Wolhart's ability to perform his job adequately, and with Meierding's ability to schedule employees and manage his store properly. (Meierding Aff. ¶ 10.) According to NAPA, Wolhart's "excessive absenteeism" was the reason for his termination. (Id. ¶ 11.) It is well established that "[a]ttendance problems may be a legitimate basis for an employer's decision to terminate an employee." Lindgren v. Harmon Glass Co., 489 N.W.2d 804, 808 (Minn. Ct. App. 1992) (citation omitted).

Wolhart argues that any absences from work were related to his hernia, or to other medical issues, and that many of them were excused and corroborated with doctors' notes.[5] (See, e.g., Wolhart Aff. ¶ 14.) This does not, however, show that NAPA's reason for terminating him was a pretext for retaliation. That some of his absences were related to, or "caused by [his workers' compensation injury], does not automatically render [NAPA's] articulated reason for [his] termination to be discriminatory." Lindgren, 489 N.W.2d at 809. Wolhart's position required his reliable attendance. In February 2004, months before his was terminated, he received a warning regarding his attendance issues, but those issues persisted and affected his job performance. Accordingly, the Court determines that

_____

[5]Wolhart also claims that an incident that occurred on the job in late April or early May 2004 supports his claim of retaliation. (See, e.g., Wolhart Aff. ¶ 14.) According to Wolhart, sometime in late April or early May 2004, he was out on his delivery route when his truck broke down. (Id.) He called back to his store and was told to wait with the truck until a NAPA employee could pick him up and arrange for the truck to be moved. He claims that it was "extremely hot and humid" at the time, and that he was forced to wait with the truck "for 2 ½ hours." (Id.) The Court determines that this incident does not support any of Wolhart's claims.

Wolhart has failed to raise a genuine issue of material fact on his workers' compensation retaliation claim, and this claim will be dismissed.

## C.     Disability Discrimination in violation of the MHRA and the ADA

Finally, Wolhart claims that he was terminated because of his physical impairments in violation of the ADA and the MHRA.  The Court will analyze each claim in turn.

### 1.     ADA

Prior to filing a lawsuit for a violation of the ADA, a claimant is required to exhaust the administrative remedies available to him under the statute.  See 42 U.S.C. § 12117(a), § 2000e-5(f)(1).  "Exhaustion of administrative remedies is central to [the ADA's] statutory scheme because it provides the EEOC the first opportunity to investigate discriminatory practices and enables it to perform its roles of obtaining voluntary compliance and promoting conciliatory efforts."  Williams v. Little Rock Mun. Water Works, 21 F.3d 218, 222 (8th Cir. 1994) (discussing regulatory scheme of Title VII[6]).  To exhaust administrative remedies an individual must: (1) timely file a charge of discrimination with the EEOC

---

[6]While Williams considered administrative exhaustion in the context of Title VII, that analysis is applicable here, as "[b]y its terms, the ADA incorporates several of the 'powers, remedies, and procedures,' of Title VII . . . into its own regulatory scheme." McKenzie v. Lunds, Inc., 63 F. Supp. 2d 986, 1000 (D. Minn. 1999); 42 U.S.C. § 12117. Specifically, the ADA requires the same exhaustion of administrative remedies as is required under Title VII.  See id. (citations omitted).

setting forth the facts and nature of the charge and (2) receive notice of the right to sue.  Id.

There is no dispute that Wolhart failed to file a charge of discrimination with either

the EEOC or the MDHR.  Therefore, he failed to exhaust his administrative remedies under

the ADA.  Wolhart does aver, however, that he:

> called the State of Minnesota Human Rights Department (651) 296-5663 for
> assistance.  They told me that if I had an attorney they could not help me.  I
> explained what happened and they told me that I was heading in the right
> channel, especially if I had an attorney.  They reiterated that they could not
> help me if I had an attorney.

(Wolhart Aff. ¶ 6.)  He also states that he:

> called the EEOC and I was told by them that if I had retained an attorney or
> had been talking with an attorney, that they could not accept my case and they
> could not help me.  I did approach the EEOC and tried to go the
> administrative route, but I was turned away and told I was not the proper
> candidate for it since I already had an attorney.

(Id. ¶ 21.)  Wolhart points to no evidence in the record, beyond his own self-serving

averments, to support his claims that both the MDHR and the EEOC discouraged him from

filing an administrative charge because he had an attorney.

The Court determines, however, that even if Wolhart's claims are accepted as true,

they do not excuse his failure to exhaust his administrative remedies.  Wolhart admits that

he had the assistance of counsel at the time he pursued the "administrative route" (id.), and

yet he apparently failed to consult his attorney or otherwise ensure the proper handling of

his claim.  Courts have enforced the requirement of exhaustion of administrative remedies

even where the plaintiff was not represented by counsel at the time of the administrative

filing.  See, e.g., Kells v. Sinclair Buick-GMC Truck, Inc., 210 F.3d 827, 836 (8th Cir.

2000) ("Even granting [the plaintiff's] pro se EEOC charge a liberal construction, we are

prohibited from inventing *ex nihilo* a claim which simply was not made."  (internal

quotation omitted)).  Accordingly, the Court determines that Wolhart's claim under the

ADA is barred for failure to exhaust his administrative remedies.

### 2.      MHRA

Wolhart also brings a claim under the MHRA alleging that he was discriminatorily

discharged based on his disabilities.  It appears that Wolhart claims that he has three

distinct disabilities: diabetes, back pain, and a left knee injury.  (Wolhart Dep. Tr. at 274-

80.)  NAPA argues that Wolhart has failed to establish that he was "disabled" under the

MHRA during his employment with the company.  (Mem. in Supp. at 12-15.)

The MHRA prohibits an employer from discharging an employee because of a

disability.  See Minn. Stat. § 363A.08, subd. 2.  In evaluating such a claim, Minnesota courts

apply the three-stage McDonnell Douglas analysis.  Lindgren v. Harmon Glass Co., 489

N.W.2d at 808.  In order to establish a prima facie case of discrimination, Wolhart must

establish that he (1) was "disabled" within the meaning of the MHRA; (2) was qualified to

perform the essential functions of the job, with or without an accommodation; and (3)

suffered an adverse employment action under circumstances giving rise to an inference of

unlawful discrimination.  Snow v. Ridgeview Med. Center, 128 F.3d 1201, 1206 (8th Cir.

1997).

The MHRA defines disability, in relevant part, as:

> any condition or characteristic that renders a person a disabled person. A
> disabled person is any person who . . . has a physical, sensory, or mental
> impairment which materially limits one or more major life activities.

Minn. Stat. § 363A.03, subd. 12(1).  Whether an impairment materially limits a major life

activity is a threshold question.  See Snow, 128 F.3d at 1206.  In order to fall under the

statute, "the impairment must prevent the [plaintiff] from performing an entire class or

broad range of jobs as compared to the average person possessing comparable training,

skills, and abilities."  Id. at 1207 (citation omitted) (considering claims under the ADA and

the MHRA together).

      Wolhart's submission on this point consists of his statement that his "life activities

have now diminished as a result from the on-the-job injury[7] and the other three injuries that

I have.  Your Affiant is unable to dance because of his knee."  (Wolhart Aff. ¶ 25 (footnote

added).)  The Court determines that this showing is insufficient to establish that any of his

claimed disabilities "materially limits one or more major life activities."  Minn. Stat. §

363.01, subd. 13(1).  Furthermore, Wolhart never requested an accommodation from

NAPA for any of his alleged "disabilities" and he agreed that he was always ready, willing

---

      [7]To the extent that Wolhart is asserting his hernia as the basis for his disability claim
under the MHRA, his claim is barred under Minnesota law.  See Neumann v. AT&T
Communications, Inc., 376 F.3d 773, 784-85 (8th Cir. 2004) (discussing Karst v. F.C.
Hayer Co., 447 N.W.2d 180 (Minn. 1989)).  "The Minnesota Supreme Court has held that
the exclusive remedy provision [of the Minnesota Workers' Compensation Act] precludes a
disability discrimination claim based on work injuries for which an employee already has
received workers' compensation benefits."  Id.  Here, Wolhart has received workers'
compensation benefits for the hernia he suffered while working at NAPA.  (See Simon Aff.
Ex. C.)

16

and able to work at NAPA while he was employed there.  (Wolhart Dep. Tr. at 267.)  His

diabetes was controlled with oral medication (not insulin) throughout his employment with

NAPA.  (<u>Id.</u> at 274.)  With respect to his back pain, Wolhart contends that, aside from a

temporary lifting restriction he was under upon his return to work from medical leave, he

was never limited in what he could do at NAPA because of his back, and he never required

any specialized treatment for it.  (<u>Id.</u> at 280.)  According to Wolhart, the back pain "comes

and goes, you know, with my left knee.  It's with the weather."  (<u>Id.</u> at 281.)  Wolhart also

testified as follows regarding his claimed impairments:

> Q:    You contend that you were at all times able to perform your delivery
>       driver position that you held with NAPA?
>
> A:    The only time I couldn't do it was when I was on lifting restrictions,
>       you know.
>
> Q:    Okay.  And you continued to perform the delivery driver position even
>       while you were on lifting restrictions?
>
> A:    Right.
>
> Q:    Which the company accommodated you, correct?
>
> A:    Yeah.
>
> Q:    Okay.  And the conditions didn't limit your ability to work in general
>       because you've held a number of jobs prior to working at NAPA and
>       after you left at NAPA, different types of jobs, correct?
>
> A:    Yeah.

(<u>Id.</u> at 283.)

The Court concludes that Wolhart has presented no evidence from which to reasonably infer that any of Wolhart's major life activities are substantially or materially limited by his physical impairments.  He has not presented any evidence to indicate that he is "precluded from performing a class or broad range of jobs as compared to average persons in the general population."  Snow, 128 F.3d at 1207; see also Landers, 345 F.3d at 674-75 (noting that where the plaintiff's "work performance was unaffected [by his impairment], according to his own assessment," he had not established a disability under the MHRA); Sigurdson v. Carl Bolander & Sons, Co., 532 N.W.2d 225, 229 (Minn. 1995) (summary judgment affirmed because the plaintiff failed to show that diabetes "materially limited his ability to obtain and retain employment").  Accordingly, the Court determines that Wolhart has failed to raise a genuine issue of material fact with respect to his claim under the MHRA[8], and that claim will be dismissed.

## Conclusion

Based on the foregoing, and all the files, records and proceedings herein **IT IS ORDERED** that NAPA's Motion for Summary Judgment (Doc. No. 20) is **GRANTED** and Kirk E. Wolhart's Complaint (Doc. No. 1) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

---

[8]The Court's analysis of Wolhart's MHRA claim would apply with equal force to his claim under the ADA.  See Snow, 128 F.3d at 1207 n.5 ("The analysis of disability under [the MHRA and the ADA] is interchangeable." (citation omitted)).  Therefore, even if the Court had determined that Wolhart's failure to exhaust his administrative remedies was not fatal to his ADA claim, that claim would be dismissed on its merits pursuant to the above analysis.

18

Dated: March 30, 2006                              s/Richard H. Kyle
                                                   RICHARD H. KYLE
                                                   United States District Judge